[Cite as *Contract Supply, Inc. v. T.H. Marsh Constr. Co.*, 2020-Ohio-3922.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| CONTRACT SUPPLY, INC., et al., | : | CASE NOS.  CA2019-11-193 |
| | | CA2019-11-195 |
| Appellants, | : | |
| | | O P I N I O N |
| | : | 8/3/2020 |
| - vs - | | |
| | : | |
| | | |
| T.H. MARSH CONSTRUCTION CO., | : | |
| et al., | | |
| | : | |
| Appellees. | | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2019-05-0956


Strauss Troy Co., LPA, Brian J. O'Connell, Stephen E. Schilling, The Federal Reserve Building, 150 East Fourth Street, Cincinnati, Ohio 45202-4018, for appellant, Contract Supply, Inc.

Benjamin, Heather, Iaciofano & Bitter, Co., Bradford C. Weber, Patrick M. O'Neill, 300 Pike Street, Suite 500, Cincinnati, Ohio 45202, for appellant, Anyweather Roofing-Dayton, LLC

Roetzel & Andress, LPA, Morris L. Hawk, 1375 East Ninth Street, One Cleveland Center, 10th Floor, Cleveland, Ohio 44144, for appellee, T.H. Marsh Construction Co.

Isaac Wiles Burkholder & Teetor, LLC, Samuel M. Pipino, Patrick M. Pickett, Two Miranova Place, Suite 700, Columbus, Ohio 43215-1173, for appellee, F.A. Construction, LLC

Barnes & Thornburg LLP, Stephen L. Fink, 88 S. Harrison Street, Suite 600, Fort Wayne, Indiana 46802, for appellees, Senior Living Fairfield LLC dba Storypoint of Fairfield, American Buildings and Contractors Supply Co., Inc., and Butler County Port Authority

U.S. Bank National Association, 13737 Noel Road, Suite 800, Dallas, Texas 75240, for appellee, U.S. Bank National Association

**M. POWELL, P.J.**

{¶ 1}   Appellant, Contract Supply, Inc. ("CSI"), appeals a decision of the Butler County Court of Common Pleas granting the motions to dismiss of appellees, T.H. Marsh Construction Co. ("Marsh"), Senior Living Fairfield, LLC dba Storypoint of Fairfield ("Senior Living"), and the Butler County Port Authority (the "Port Authority").

{¶ 2}   This case arose out of a payment dispute related to the construction of the StoryPoint Fairfield Senior Living Center in Fairfield, Ohio.  The Port Authority owns the land on which the facility was built.  Senior Living was the developer of the facility and now operates it.  In October 2016, Senior Living entered into a contract with Marsh (the "Prime Contract") for Marsh to serve as the general contractor for the construction of the facility.  Marsh entered into subcontracts with CSI to frame and erect the building and with Anyweather Roofing-Dayton, LLC ("Anyweather"), a successor-in-interest to Noble Roofing, Inc., to construct the roof.

{¶ 3}   The subcontracts incorporated the Prime Contract by reference and generally provided that "[a]ny claim arising out of or related to this Subcontract shall be handled in accordance with the Prime Contract[.]  All claims must be made by the Subcontractor to Contractor in the same manner as required by Contractor to Owner in the Prime Contract, including, but not limited to, the timing for such claim."

{¶ 4}   The Prime Contract, in turn, provided that "[c]laims, disputes, or other matters in controversy arising out of or related to the Contract * * * shall be subject to mediation as a condition precedent to binding dispute resolution."  The Prime Contract further provided that "any Claim subject to, but not resolved by, mediation * * * shall be settled by arbitration

* * * or through litigation in the court having jurisdiction. The Owner at his sole discretion shall determine whether to arbitrate or litigate any disputes or claims." These two provisions will be herein referred to as the "dispute resolution clause."

{¶ 5} Senior Living terminated its Prime Contract with Marsh in June 2018 and assumed all of Marsh's rights and responsibilities under the contract. Senior Living notified CSI and Anyweather in July 2018 that it was exercising its right to take assignment of their respective subcontracts. On August 1, 2018, Senior Living terminated the subcontract with CSI. On August 29, 2018, CSI recorded a mechanic's lien for unpaid work in the amount of $356,922.23. Anyweather recorded a mechanic's lien for unpaid work and a separate lien on public funds in December 2018.

{¶ 6} On May 10, 2019, CSI filed a complaint against Senior Living, the Port Authority, Marsh, and other defendants who may claim an interest in the facility such as Anyweather. CSI's complaint sought to foreclose its mechanic's lien against all defendants, asserted claims for breach of contract and violation of the Prompt Payment Act against Marsh and Senior Living and unjust enrichment against Senior Living and the Port Authority, and asserted a claim under R.C. 1311.04(C). Anyweather filed an answer with cross-claims and counterclaims.

{¶ 7} Marsh moved to dismiss CSI's complaint and Anyweather's cross-claims under Civ.R. 12(B)(1), arguing that the common pleas court did not have subject-matter jurisdiction over the parties' dispute because CSI and Anyweather failed to satisfy the condition precedent in their respective subcontracts that they pursue alternative dispute resolution before commencing legal action. Senior Living and the Port Authority jointly moved to dismiss CSI's complaint and Anyweather's cross-claims for lack of subject matter jurisdiction under Civ.R. 12(B)(1) on the same ground. Alternatively, Senior Living and the

Port Authority requested that the litigation be stayed pending arbitration.[1]

{¶ 8} In its response to the motions to dismiss, CSI argued, inter alia, that the proper remedy was to stay the matter pursuant to R.C. 2711.02(B) rather than dismiss it, and that its claim for foreclosure of its mechanic's lien was not arbitrable under R.C. 2711.01(B)(1) because it involved title to real estate.

{¶ 9} On October 31, 2019, the common pleas court granted the Civ.R. 12(B)(1) motions to dismiss of Senior Living, the Port Authority, and Marsh. Construing CSI's filing of its mechanic's lien as a "legal act," the common pleas court held it did not have subject-matter jurisdiction under Civ.R.12(B)(1) because CSI failed to satisfy the condition precedent in the mandatory dispute resolution clause that it pursue alternative dispute resolution before commencing legal action. Regarding Marsh, the common pleas court further held that dismissal was appropriate because once Senior Living terminated the Prime Contract and assumed Marsh's rights and responsibilities under the subcontract with CSI, Marsh was relieved of its obligations to CSI. The common pleas court further found that CSI was not entitled to a stay of the proceedings because it was "in default in proceeding with arbitration" under R.C. 2711.02(B).

{¶ 10} CSI now appeals, raising one assignment of error:

{¶ 11} THE TRIAL COURT ERRED BY DISMISSING CSI'S COMPLAINT.

{¶ 12} CSI presents four issues for review. The first issue challenges the common pleas court's dismissal of CSI's claims against Senior Living, the Port Authority, and Marsh for lack of subject-matter jurisdiction by virtue of the dispute resolution clause. CSI argues that the common pleas court has subject-matter jurisdiction over CSI's claims pursuant to

---

1. Senior Living and Anyweather settled their claims in April 2020. On July 9, 2020, this court granted Anyweather's motion to dismiss its appeal. *Contract Supply, Inc. v. T.H. Marsh Construction Co.*, 12th Dist. Butler Nos. CA2019-11-193 and CA2019-11-195 (July 9, 2020) (Entry Granting Appellant's Motion to Dismiss Appeal).

R.C. 2305.01 and applicable caselaw. The second issue challenges the common pleas court's failure to stay the proceedings pursuant to R.C. 2711.02(B). The third issue challenges the common pleas court's dismissal of CSI's foreclosure claims for lack of subject-matter jurisdiction on the ground that the dispute resolution clause does not apply to such claims under R.C. 2711.01(B)(1). The fourth issue challenges the common pleas court's application of CSI's contractual obligations to defendants that were not parties to its subcontract.

{¶ 13} We review the common pleas court's decision to dismiss CSI's claims against Senior Living, the Port Authority, and Marsh for lack of subject-matter jurisdiction under a de novo standard of review. *Digonno v. Hamilton*, 12th Dist. Butler No. CA2018-08-168, 2019-Ohio-2273, ¶ 16. Under this standard of review, we must independently review the record and afford no deference to the common pleas court's decision. *Pappas v. Richmond Towers L.L.C.*, 8th Dist. Cuyahoga No. 94558, 2011-Ohio-5249, ¶ 7.

{¶ 14} Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. *Id.*

{¶ 15} With certain exceptions not applicable here, R.C. 2305.01 provides that "the court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts and appellate jurisdiction from the decisions of boards of county commissioners." County courts have exclusive original jurisdiction in civil actions for the recovery of sums not exceeding $500 and original jurisdiction in civil actions for the recovery of sums not exceeding $15,000. R.C. 1907.03.

{¶ 16} We find that the common pleas court erred in dismissing CSI's claims against Senior Living and the Port Authority and CSI's claim for foreclosure of its mechanic's lien against Marsh for lack of subject-matter jurisdiction by virtue of the dispute resolution clause.

{¶ 17} CSI's action was a breach of contract and unjust enrichment action seeking to foreclose a mechanic's lien and recover the sum of $356,922.23 plus interest totaling $408,000 for unpaid work. Accordingly, the common pleas court has subject-matter jurisdiction over the action under R.C. 2305.01. *See also Vukelic v. Super 8 Builders, Inc.*, 7th Dist. Jefferson Case No. 90-J-2, 1991 Ohio App. LEXIS 1900 (Apr. 26, 1991) (in Ohio common pleas courts have jurisdiction over mechanics' liens regardless of the amount of the claim for the lien); 68 Ohio Jurisprudence 3d, Mechanics' Liens, Section 181 (2012) (same).

{¶ 18} Furthermore, we have held that "R.C. 2305.01 does not strip a court of common pleas of jurisdiction if a dispute is subject to arbitration. Accordingly, a court of common pleas has subject matter jurisdiction over a dispute, even if that dispute is subject to an arbitration agreement." *Anglin v. Donohoo*, 12th Dist. Clermont No. CA2018-05-025, 2018-Ohio-4484, ¶ 23; *Anderson v. Lofton*, 12th Dist. Warren No. CA2014-08-108, 2015-Ohio-1603, ¶ 15, fn. 3.

{¶ 19} "R.C. Chapter 2711, which deals with arbitration, supports this conclusion." *Anglin* at ¶ 24. "Pursuant to this Chapter, a party may bring an action, even if the issues involved are subject to arbitration." *Id.* For example, R.C. 2711.02(B) provides that

> [i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the

issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Therefore, "'according to the explicit language in the Revised Code, if a court determines that the issues within an action are subject to arbitration, then, *on application of one of the parties*, it must stay proceedings pending arbitration' unless the court finds the applicant is in default in proceeding with arbitration." (Emphasis sic.) *Id.*, quoting *Taylor Winfield Corp. v. Winner Steel, Inc.*, 7th Dist. Mahoning No. 05 MA 191, 2006-Ohio-4608, ¶ 10.

{¶ 20} Other appellate districts have likewise held that the fact a parties' dispute may be subject to arbitration does not divest the trial court of its subject-matter jurisdiction over the controversy. *See Taylor Winfield* at ¶ 7, 14; *Minkin v. Ohio State Home Servs., Inc.*, 10th Dist. Franklin No. 16AP-178, 2016-Ohio-5804, ¶ 15-16; *Bank of Am. v. Telerico*, 11th Dist. Portage No. 2015-P-0026, 2015-Ohio-4544, ¶ 30-31; and *Pappas*, 2011-Ohio-5249 at ¶ 8-11.

{¶ 21} In its second issue, CSI argues the common pleas court erred in refusing to stay the litigation pending arbitration upon finding CSI was in default of arbitration under R.C. 2711.02(B). The common pleas court found CSI was in default of arbitration because it had filed a mechanic's lien, "a legal step, and a maneuver that would in fact activate provisions of statutory law that block arbitration."

{¶ 22} Section 4.7.1 of CSI's subcontract provides that "[CSI] may without prejudice to any other available remedies, file a mechanic's or construction lien, but may not stop the Work of this Subcontract." Thus, CSI's subcontract specifically reserved to it the right to file a mechanic's lien notwithstanding the fact that the mechanic's lien arises from a contractual claim subject to alternative dispute resolution. This provision of CSI's subcontract is obviously intended to preserve CSI's lien rights under R.C. Chapter 1311, which it would

otherwise forfeit if it failed to file its mechanic's lien "within seventy-five days from the date on which the last of the labor or work was performed or material was furnished" for the project. R.C. 1311.06(B)(3). We therefore hold that the common pleas court erred in finding CSI was in default of arbitration under R.C. 2711.02(B) because it filed a mechanic's lien. We further hold the common pleas court erred in failing to stay the proceedings based upon its erroneous finding CSI was in default of arbitration.

{¶ 23} We therefore conclude that the common pleas court erred in finding it did not have subject-matter jurisdiction over the action by virtue of the dispute resolution clause. The common pleas court dismissed the action on the ground that although the Prime Contract "clearly cede[d] authority to Marsh, or its successor in interest, Senior Living, to determine whether to pursue mediation, arbitration or litigation for resolution of disputes," they were "denied the opportunity to designate a forum for alternative dispute resolution[.]" However, CSI's filing of the mechanic's lien and complaint does not prevent Senior Living and the Port Authority from exercising their right to choose arbitration or litigation. It was their choice before the mechanic's lien and/or complaint was filed, and it remains their choice after the filing of the complaint. Accordingly, the common pleas court erred in granting the joint Civ.R. 12(B)(1) motion of Senior Living and the Port Authority and dismissing CSI's claims against them. The common pleas court further erred in granting Marsh's Civ.R. 12(B)(1) motion to dismiss CSI's claim for foreclosure of its mechanic's lien.

{¶ 24} Based upon the assignment of Marsh's contractual rights and obligations to Senior Living, however, the common pleas court correctly dismissed CSI's breach of contract and violation of the Prompt Payment Act claims against Marsh.[2]    *Inter Ins.*

---

2. On appeal, CSI did not challenge the common pleas court's dismissal of its contract-related claims against Marsh on that basis.

*Exchange of Chicago Motor Club v. Wagstaff*, 144 Ohio St. 457, 460 (1945); *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 89 (10th Dist.). Based upon our resolution of CSI's first and second issues and our reversal of the common pleas court's decision granting the Civ.R. 12(B)(1) motions to dismiss of Marsh, Senior Living, and the Port Authority, CSI's third and fourth issues are moot and will not be addressed. CSI's assignment of error is sustained.

{¶ 25} The judgment of the common pleas court is reversed and this matter is remanded for further proceedings according to law and not inconsistent with this opinion, including granting a stay of the proceedings pursuant to R.C. 2711.02(B).

S. POWELL and PIPER, JJ., concur.